IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JEREMY DUNCAN, a fictitious name )
pursuant to SLR 2.035, )
  )
   Plaintiff, )  Civil Case No. 05-1747-KI *(Lead Case)*
  )
 vs. )  CONSOLIDATED CASES
  )
STATE OF OREGON; OREGON YOUTH )  OPINION AND ORDER
AUTHORITY; MICHAEL LEE BOYLES; )
ROBERT JESTER; JOSEPH MESTETH; )
KAREN BRAZEAU; and JOHN AND )
JANE DOES 1-10, )
  )
   Defendants. )

  Robert G. Thuemmel
  Thuemmel & Uhle
  210 S.W. Morrison Street, Suite 600
  Portland, Oregon  97204

    Attorney for Plaintiff Duncan and D.B.

  John D. Ryan
  503 S.W. Colony Drive
  Portland, Oregon  97219

    Attorney for Plaintiff Duncan

Erin K. Olson
2905 N.E. Broadway Street
Portland, Oregon  97232

      Attorney for Plaintiff D.B.
         Munoz Estate, and M.D.

Michelle R. Burrows
618 N.W. Glisan Street, Suite 203
Portland, Oregon  97209

      Attorney for Plaintiff M.A. and D.B.
         D.H.M.

H.R.
      Pro Se Plaintiff

Randall Vogt
2125 S.W. 4th Avenue, Suite 600
Portland, Oregon  97201

      Attorneys for Plaintiff J.D.

David L. Kramer
James S. Smith
State of Oregon
Department of Justice, Trial Division
1162 Court Street, N.E.
Salem, Oregon  97301-4096

      Attorneys for Defendants State of Oregon, OYA, Jester and Brazeau

Robert A. Petersen
528 Cottage Street, NE
Suite 160
Salem, Oregon 97301

      Attorney for Defendant Mesteth

Michael Lee Boyles
Swiss #681118
Multnomah County Sheriff's Office
Justice Center
1120 S.W. 3rd Avenue
Portland, Oregon  97204

      Pro Se Defendant

KING, Judge:

These consolidated cases concern the tragic events that occurred when defendant Michael Boyles sexually abused several youths under the jurisdiction of the Oregon Youth Authority ("OYA") when Boyles was assigned as the youths' Parole and Probation Officer ("PPO").  The youths sued the State of Oregon, the OYA, and several state employees in addition to Boyles: Robert Jester, Joseph Mesteth, Karen Brazeau, Havan Jones, and John Powell.  Boyles is now serving a prison term after conviction for these acts.  All defendants other than Boyles (collectively, "State Defendants") rely on a statute of limitations defense and seek summary judgment against the claims of M.A., M.D., J.D., Munoz Estate, and Jeremy Duncan.[1]  For the reasons below, I deny the motion concerning M.A., M.D., J.D., and Jeremy Duncan and defer the motion concerning the Munoz Estate.

## FACTS

The facts concerning each plaintiff are stated below.  Here is a brief summary of other reports people made concerning Boyles' conduct.

Margaret Holland is the legal guardian of Daniel Brink, who was in the custody of the OYA and assigned to Boyles beginning in 1994.  Holland became concerned that Boyles was

---

[1] Also a fictitious name.

sexually abusing Brink.  In 1995, she wrote a series of letters to various administrators for

Children's Services Division.  The letters complain of many issues related to Brink's care and

treatment, including that Boyles took Brink to his trailer alone, was constantly rubbing Brink's

neck and shoulders, and was too personally enmeshed with Brink to be effective.  Holland also

asked for Brink to be tested for sexual molestation.

Kelly Mills, the aunt and legal guardian for Aaron Munoz, complained on three occasions

to Joseph Mesteth, Boyles' supervisor, and on one occasion to an OYA official named Karen,

that Boyles did not allow Munoz to have contact with Mills or her son for long periods of time,

that at times spent Munoz spent the night with Boyles, that the foster home run by Jim Lyman

had no shower or bedroom doors and had alcohol available, and that Boyles was buying Munoz

expensive clothes and taking him out to eat.

John Powell was a supervisor of Boyles.  He received complaints that Boyles would

spend too much time with some children and not enough with others.  Powell was aware that

Boyles had picked up a child from custody in Seattle and stayed at Boyles' family member's

home with the child before returning to Oregon.  Powell was aware of Holland's complaints.

Floyd Mesteth also supervised Boyles for a period of time.  Mesteth received a complaint

from another PPO, Fereydoun Ejtehadi, who was supervising a juvenile previously on Boyles'

case load.  Ejtehadi complained that Boyles was overly involved and wanted to maintain contact,

even though he was no longer the PPO.  Foster parents complained to Mesteth that Boyles put his

arm around boys he was supervising.

Havan Jones was another supervisor of Boyles.  Jones was aware that Boyles was living

with J.D. after J.D. was no longer in the custody of the OYA but was still on probation, a

violation of the rules.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

The threshold issue is which statutes of limitations apply to the various claims. After making the determination, I will apply the statutes to the facts for each plaintiff.

I.    Section 1983

A.    Personal Injury Limitations Statute

State Defendants contend that Oregon's two-year statute of limitations for personal injury is borrowed for the § 1983 claim, as well as Oregon's tolling provision for minors.

Plaintiffs agree that the § 1983 claims must borrow a state statute of limitations but contend that Oregon has two such statutes: two years under ORS 12.110(1) for personal injuries and tolled for six years after the person reaches 18 years under ORS 12.117 for child abuse. Plaintiffs contend that ORS 12.117 must be used because it falls within the exception in ORS 12.110(1) for actions not especially enumerated in the chapter.

State Defendants argue that replacing ORS 12.110 with ORS 12.117 as the borrowed statute would require an analysis based on the facts in each particular case, in violation of the holding in Wilson v. Garcia, 471 US. 261 (1985).

When a federal statute does not contain a limitations period, as is the case with § 1983, the court is "to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S. Ct. 1938 (1985). The characterization of the claim is a matter of federal law. The length of the limitations period, and the "closely related questions of tolling and application" are governed by state law. Id. at 268-69. Based on the federal interests of uniformity and certainty, the Court reasoned that "a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose," even in light of the "wide diversity of claims that the new remedy [§ 1983] would ultimately embrace." Id. at 271-75. The court held that all § 1983 claims, whatever their nature, should borrow the state's statute of limitations for personal injury actions. Id. at 276.

Owens v. Okure, 488 U.S. 235, 109 S. Ct. 573 (1989), then addressed the issue of what limitations period applies to a § 1983 claim where the state has one or more statutes of limitations for certain enumerated intentional torts and a residual statute for all other personal injury actions. The Court noted that Wilson "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." Id. at 248. The Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Id. at 250.

Broad tolling rules, such as those for the litigant's incapacity, the pendency of other proceedings, equitable tolling, and equitable estoppel are borrowed from state law. Sain v. City

of Bend, 309 F.3d 1134, 1138 (9th Cir. 2002); Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006).

The Tenth Circuit refused to apply Colorado's statute of limitations for sexual assault against a child to § 1983 claims in Blake v. Dickason, 997 F.2d 749 (10th Cir. 1993), in which a child was repeatedly sexually abused by her high school teacher.  The court noted that Colorado had multiple personal injury statutes of limitations:  (1) the two-year residual statute for all actions including personal injury actions; (2) a separate limitation for assault and battery; and (3) a six-year limitation for sexual assault against a child.  The court held that Owens required use of the residual statute, even though it barred the child's and parent's claims.  The court also found that the two-year residual statute comported with all relevant federal interests.  Id. at 751.

I agree with State Defendants that under Wilson and Owens, the two-year residual statute for personal injury actions found in ORS 12.110(1) is the appropriate statute to apply.  If I made an exception for the child abuse limitation statute in ORS 12.117, I would also have to make an exception for the one-year defamation limitation statute in ORS 12.120(2).  We would be looking at the nature of each claim, something the Court wished to avoid.  Thus, the analysis begins with the two-year statute of limitations found in ORS 12.110(1).

B.    Tolling for Minority

If the court decides that the date of the sexual abuse begins the running of the limitations period, tolled only for one year under ORS 12.160 due to his minority, M.A. makes an alternative argument based on ORS 12.117.  M.A. contends that the "notwithstanding clause" of ORS 12.117 makes it an exception to ORS 12.110(1) and ORS 12.160.  Because the statutes are inconsistent as to the amount of time to toll for minority status, M.A. reasons, the ORS 12.117 "notwithstanding clause" makes it the controlling tolling statute for minority status.  M.A. thus

argues that the minority tolling provision should be borrowed from ORS 12.117 rather than

ORS 12.160.

Based on the language in the relevant statutes, State Defendants argue that ORS 12.117 is

clearly a separate statute of limitations for child abuse claims and not a tolling provision.

> An action for assault, battery, false imprisonment, or for any injury to the
> person or rights of another, not arising on contract, and not especially enumerated
> in this chapter, shall be commenced within two years; provided, that in an action
> at law based upon fraud or deceit, the limitation shall be deemed to commence
> only from the discovery of the fraud or deceit.

ORS 12.110(1).

> (1) Notwithstanding ORS 12.110, 12.115 or 12.160, an action based on
> conduct that constitutes child abuse or conduct knowingly allowing, permitting or
> encouraging child abuse accruing while the person who is entitled to bring the
> action is under 18 years of age shall be commenced not more than six years after
> that person attains 18 years of age, or if the injured person has not discovered the
> injury or the causal connection between the injury and the child abuse, nor in the
> exercise of reasonable care should have discovered the injury or the causal
> connection between the injury and the child abuse, not more than three years from
> the date the injured person discovers or in the exercise of reasonable care should
> have discovered the injury or the causal connection between the child abuse and
> the injury, whichever period is longer.

ORS 12.117.

> If, at the time the cause of action accrues, any person entitled to bring an
> action mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 and 12.276 is within
> the age of 18 years or insane, the time of such disability shall not be a part of the
> time limited for the commencement of the action; but the period within which the
> action shall be brought shall not be extended more than five years by any such
> disability, nor shall it be extended in any case longer than one year after such
> disability ceases.

ORS 12.160.

The two statutes that we all agree are statutes of limitations, ORS 12.110(1) and

ORS 12.117, state that the action "shall be commenced" within a certain time frame.  The tolling

provision for minority and insanity, ORS 12.160, does not contain this phrase but instead

removes the time of disability from the limitations period and states a maximum extension period. The phrasing of the tolling statute is completely different from the limitations statutes. ORS 12.117 also contains the "shall be commenced" language and thus is a limitations statute and not a tolling statute. Consequently, I do not adopt M.A.'s argument and will apply ORS 12.160 as the minority tolling provision.

    C.    <u>Federal Discovery Rule</u>

State Defendants apply the federal injury discovery rule that a cause of action accrues when the plaintiff suffers an injury of which the plaintiff is aware, even if plaintiff is unaware of the other elements of the claim. In combination with the two-year statute of limitations for personal injury, State Defendants argue that each plaintiff had to commence the § 1983 claim within two years from the date of the last alleged abuse, or their 19th birthday, whichever is later. State Defendants contend that plaintiffs' damages occurred at the time of the sexual abuse, even when looking at the alleged pattern of hiding their failure to investigate and supervise Boyles.

Under the federal discovery rule, plaintiffs contend that State Defendants' policy of failing to investigate and discipline Boyles is separate from the sexual abuse committed by Boyles. Plaintiffs argue that two different legal interests were invaded so that awareness of the sexual abuse does not impute knowledge of the claims against State Defendants. Plaintiffs argue that State Defendants' ongoing conduct is a pattern or systemic policy that extends the limitations time to the last act in the series. Plaintiffs contend that State Defendants had a policy of failing to investigate and supervise Boyles and failing to keep records of complaints against him, thus hiding the information from plaintiffs. This policy did not come to light due to State Defendants' efforts to hide it until they testified at Boyles' criminal trial on July 8, 2005. Thus,

plaintiffs contend that the ongoing conduct did not end until July 8, 2005, which should start the limitations period under their analysis.

Under federal law, which controls this question for a § 1983 claim, a claim accrues "when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." Johnson v. State of California, 207 F.3d 650, 653 (9th Cir. 2000) (for claim alleging racial segregation by director of the Department of Corrections).

T.R. v. Boy Scouts of America, 205 Or. App. 135, 133 P.2d 353 (2006), is very instructive because the facts are so similar to the actions before me. T.R. was in an Explorer program designed to introduce the Explorers to police work. The program's advisor was Officer Tannehill with The Dalles Police Department. T.R. saw Tannehill while he was both on and off duty, including on occasions that were not part of the Explorer program. This escalated to T.R. visiting Tannehill at his home, T.R. being given alcohol by Tannehill, and T.R. having sexual activity with Tannehill in January and March 1996, sometimes under compulsion. In October 2001, T.R. provided information to an investigation of a second officer serving alcohol to a minor and also mentioned the sexual abuse by Tannehill. At the time of T.R.'s testimony before the grand jury in October or November 2001, T.R. was not allowed to listen to the other witnesses but was told by other officers that "Jim [Tannehill] likes boys, Jim's a queer." T.R. filed a common-law negligence claim against the city in June 2002. In July 2003, T.R. amended his complaint and filed a § 1983 claim against the city, alleging that it ignored reports of Tannehill's abusive tendencies and failed to properly train its officers. Id. at 137-38.

Based on federal cases, the court analyzed when T.R.'s § 1983 claim accrued. T.R. contended that his claim did not accrue until he acquired knowledge during the grand jury proceedings that the city potentially caused his injury.

The Court [in <u>Kubrick</u>, a medical malpractice case under the Federal Tort Claims Act] adopted a rule under which the limitations period begins when a plaintiff knows that he or she has been injured and knows or should know the cause of the injury; at that point, a plaintiff

> "can protect himself by seeking advice in the medical and legal community.  To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the government."

[<u>United States v. Kubrick</u>, 444 U.S. 111, 123, 100 S. Ct. 352 (1979)].  Commenting on <u>Kubrick</u> in a later case, <u>Rotella v. Wood</u>, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000), the Court held that the "traditional federal accrual rule" is the "injury discovery" rule, under which "discovery of the injury, not discovery of the *other elements of a claim*, is what starts the clock."

<u>Id.</u> at 140 (emphasis added in <u>T.R.</u>).  The court then considered the issue of a plaintiff who knows the fact of injury and its physical cause but does not know who is actually responsible for its infliction.

> The implication of the Supreme Court cases, then, is that the claim can accrue before the plaintiff actually knows the identity of the tortfeasor if he or she has sufficient information to cause a reasonable person to make a further inquiry – and that a plaintiff who knows he or she is injured and knows the physical or immediate cause of the injury has such information.

<u>Id.</u> at 141.

The court also succinctly summarized <u>Plumeau v. School District #40 County of Yamhill</u>, 130 F.3d 432 (9th Cir. 1997):

> [T]he plaintiff was mother of a grade-school child who was sexually abused on school property by a school employee, the janitor, between 1984 and 1987.  The plaintiff did not discover the abuse until 1992, when the child attempted suicide and, in the aftermath, disclosed what had happened.  The janitor was convicted of the abuse, and, at a sentencing hearing on September 9, 1993, the plaintiff (according to her testimony) first began to suspect that the school district, as employer of the janitor, was in some measure responsible for the injury.  She filed a state tort claim and a section 1983 claim against the district in federal court on May 10, 1994.  . . .

The court held, first, that the 270-day [OTCA] limitation period began not at the sentencing hearing where the plaintiff first learned that the district might be potentially responsible for the abuse, but "long before" that time; the plaintiff had

"a duty to use due diligence in an effort to discover the party responsible for her injury. . . . The Plumeaus knew the abuse took place during school hours and on school property and that the abuser was a school district employee. We agree with the district court that these facts were sufficient to apprise the Plumeaus of their potential claims against the district for failure to supervise [the employee]."

The court also held that the same events triggered the statute of limitations for the section 1983 claim: "[T]he date of discovery was May 29, 1992, shortly following [the child's] suicide attempt." Thus, according to the court, the plaintiff's claim against the government employer accrued as soon as she had knowledge of the sexual abuse and of circumstances clearly indicating the relationship between the abuser and his government employer.

Id. at 142 (internal citations omitted).

Based on this analysis, the court held that more than two years[2] before filing the action, T.R. had sufficient facts to trigger the duty to discover the parties that caused his injury because T.R. knew that he was injured, knew that Tannehill's sexual abuse was the physical cause of the injury, knew that some of the abuse occurred when Tannehill was on duty, and knew that Tannehill was a city employee. The court concluded that a reasonable person would have acted on those facts by seeking advice in the medical and legal community. Id. at 142-43.

I agree with plaintiffs that State Defendants' policy of failing to investigate and discipline Boyles involves a separate legal interest than the sexual abuse committed by Boyles. The damage to plaintiffs, however, occurred when they were sexually abused. They were not further damaged if State Defendants covered up their knowledge of Boyles' misconduct with others or if

---

[2] Citing ORS 12.160, the court did not discuss the effect of T.R.'s minority on the statute of limitations because more than two years passed between his eighteenth birthday and the commencement of the action. Id. at 143 n.4.

State Defendants failed to act to protect plaintiffs.  The sexual abuse is the injury which is the basis for both the cause of action against Boyles and the cause of action against State Defendants.  All plaintiffs remember the abuse, none had repressed memories.  They knew they were abused and they knew Boyles was a state employee.  I sympathize with plaintiffs' arguments that they had no one to turn to for help because Boyles ruled their lives.  Plaintiffs, however, could have spoken to teachers, counselors, foster parents, judicial officers, or medical personnel.

I will apply the continuing violation theory for plaintiffs that were abused by Boyles more than once.  See Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (continuing violation theory applies to § 1983 action in which the alleged "acts are related closely enough to constitute a continuing violation, and that one or more of the acts falls within the limitations period").  Each act of abuse is actionable in its own right and is more than a continuing impact from past violations.  The continuing nature of the alleged cover-up, however, does not alter when plaintiffs were damaged.

> D.    Equitable Estoppel and Tolling

Plaintiffs argue that the concepts of equitable estoppel and equitable tolling make their claims timely.  Plaintiffs contend that the equitable doctrines should be applied because, by assigning Boyles as plaintiffs' PPO, State Defendants falsely represented to plaintiffs that Boyles was not a risk and would act in their best interests.  At the time of the assignments, State Defendants already knew that Boyles acted improperly with other minor probationers and concealed these facts from plaintiffs.

State Defendants contend that no evidence exists to support several of the elements of equitable estoppel.  They first argue that plaintiffs do not identify specific facts State Defendants failed to reveal but instead fall back on an argument that State Defendants had sufficient

information to realize that Boyles was a threat and relieve him of his duties.  State Defendants

contend that, at most, this describes negligence which is insufficient to be a misrepresentation as

required by this doctrine.  State Defendants further argue that the facts they knew were not of a

sufficient quality to put them on notice of the problem, that plaintiffs were not ignorant of the

fact that Boyles was a pedophile and that he worked for OYA, and that nothing State Defendants

did induced plaintiffs to fail to file their claims.  State Defendants also rely on statutory

restrictions which prevent them from revealing confidential information of this nature.

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if
> despite the exercise of all due diligence he is unable to obtain vital information
> bearing on the existence of his claim.  In contrast, the doctrine of equitable
> estoppel comes into play if the defendant takes active steps to prevent the plaintiff
> from suing in time, as by promising not to plead the statute of limitations.

Shropshear v. Corporation Counsel of City of Chicago, 275 F.3d 593, 595 (7th Cir. 2001).

Equitable estoppel to preclude a defendant from invoking the statute of limitations has the

following elements:

> To constitute an equitable estoppel, or estoppel by conduct, (1) there must
> be a false representation; (2) it must be made with knowledge of the facts; (3) the
> other party must have been ignorant of the truth; (4) *it must have been made with
> the intention that it should be acted upon by the other party*; and (5) the other
> party must have been induced to act upon it.

Gehrke v. CrafCo, Inc., 143 Or. App. 517, 525, 923 P.2d 1333 (1996) (emphasis in the original;

internal quotation omitted).

I conclude that neither equitable doctrine applies here when based on State Defendants'

failure to properly supervise Boyles.  Plaintiffs all knew that they had been abused by a state

employee and that his conduct was wrong.  There is no evidence that State Defendants' conduct

was intended to delay plaintiffs from bringing their claims or that plaintiffs were induced to delay

because of the conduct.

Equitable estoppel based on Boyles actions, however, is a better argument.  Plaintiffs rely on M.N.O. v. Magana, Civ. Nos. 03-6393-TC, 04-1021-TC, 04-6017-TC, 04-6018-TC, 04-6183-TC, 04-6443-TC, 2006 WL 559214 (D. Or. Mar. 6, 2006), in which several women sued the City of Eugene for the acts of two police officers who used their positions of authority to sexually assault the women.  The officers directly threatened physical harm to keep some of the women from reporting the misconduct.  The court held that equitable estoppel was available for both § 1983 claims and OTCA claims if the plaintiff could demonstrate that:

> (1) the defendant made specific promises, threats or inducements that prevented the plaintiff from filing suit; (2) those promises, threats or inducements actually caused the plaintiff to forbear filing the lawsuit; (3) the forbearance was reasonable; and (4) the plaintiff filed suit within a reasonable time after termination of the conduct causing such forbearance.

Id. at *2.  A natural fear of retribution based solely on the fact that the defendant has a position of authority, such as a police officer, is insufficient on which to base the estoppel.  Id. at *3.  See also Nolde v. Frankie, 964 P.2d 477, 482 (Ariz. 1998); John R. v. Oakland Unified School District, 769 P.2d 948, 951-52 (Cal. 1989).  Even though the officers in M.N.O. made the threats, the court estopped the City from asserting the statute of limitations in some instances.

I adopt this reasoning and will apply this form of estoppel below on a case-by-case basis.

E.     Summary

Accordingly, for the § 1983 claims, I will use the two-year statute of limitations in ORS 12.110(1), tolled for minority under ORS 12.160, with the claims accruing at the latest at the time of the last sexual abuse.  I will consider equitable estoppel based on Boyles' threats.

II.     Oregon Tort Claims Act

State Defendants contend that the Oregon Tort Claims Act ("OTCA") has a two year statute of limitations with no tolling provisions and that under the OTCA, a claim accrues when a

plaintiff is aware, or reasonably should be aware, of a substantial possibility of harm, causation, and tortious conduct.  Applying this argument, State Defendants contend that the OTCA claims accrued when the plaintiffs were sexually abused.  State Defendants also contend that no discovery rule applies to the OTCA.  Even if the court utilizes a discovery rule, however, State Defendants contend that plaintiffs' claims accrued at the time of their injury, when the sex abuse occurred, because knowledge of tortious conduct does not require knowledge of a particular legal theory.  State Defendants contend that case law focuses on plaintiff's knowledge and not on plaintiff's ability to deal with the information in a productive fashion.

Plaintiffs argue that the tort claims against State Defendants are based on negligence for failing to properly investigate and supervise Boyles.  Plaintiffs thus argue that the tort claims did not accrue until they knew the identity of the wrongdoers, meaning State Defendants and not only Boyles, and that this did not happen for several years after the abuse when Boyles' misconduct came under public scrutiny.  Plaintiffs further contend that the OTCA limitations period should be tolled because they were in a special fiduciary relationship with State Defendants who did not remove Boyles from his duties even though they had information that he was a danger to minor children.

For the OTCA:

Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury.

ORS 30.275(9).  Tolling provisions other than the three stated do not apply to OTCA claims.

O'Brien v. State of Oregon, 104 Or. App. 1,5, 799 P.2d 171 (1990).  Thus the tolling provision

for minors contained in ORS 12.160 does not apply to the OTCA claims.

In the context of limitations for torts, "injury" is a legally cognizable harm consisting of

harm, causation, and tortious conduct.  Gaston v. Parsons, 318 Or. 247, 253-55, 864 P.2d 1319

(1994) (analyzing ORS 12.110(4) for medical malpractice claim and finding it consistent with

the meaning in ORS 12.110(1)).

> Actual knowledge that each element is present is not required.  On the other hand,
> a mere suspicion is insufficient to begin the statute of limitations to run.  We
> believe that a quantum of awareness between the two extremes is contemplated by
> the statute.  Therefore, the statute of limitations begins to run when the plaintiff
> knows or in the exercise of reasonable care should have known facts which would
> make a reasonable person aware of a substantial possibility that each of the three
> elements (harm, causation, and tortious conduct) exists.

Id. at 256.  When there are two different legally protected interests, "awareness of a violation of

one interest does not put a plaintiff on notice as a matter of law of the possible violation of other

distinct legally protected interests."  Id. at 260.  The claims must be analyzed separately.  Id.

"The plaintiff does not need to identify a particular theory of recovery before the statute of

limitations begins to run."  Doe v. American Red Cross, 322 Or. 502, 513, 910 P.2d 364 (1996)

(although knowledge that HIV contaminated blood supplied by the Red Cross put the recipient

on inquiry notice of the existence of tortious conduct by the Red Cross, there was still a factual

issue of what the recipient would have learned if they had inquired in 1987 about the possibility

that the Red Cross was negligent).

Plaintiffs cite Johnson v. Multnomah County Dept. of Community Justice, No.

040606577, 2007 WL 258440, *4-*5 (Or. App. Jan. 31, 2007), for its holding that a factual issue

existed on the date when plaintiff knew, or reasonably should have known, of a substantial

possibility that the government defendant was responsible for her injury.  At the age of 14,

plaintiff was raped by a man who was under the supervision of the government defendant.

Plaintiff was not aware that the rapist was under government supervision until several years after

the rape.  At that time, newspaper articles began to explore the rapist's other crimes and the fact

that he had been under supervision while some of them occurred.  Id. at *2-*3.  The court stated,

"Thus, the duty to inquire into the possible role of the government defendant occurs when the

plaintiff has facts that establish a connection between the person who actually and directly

inflicts harm (here, [the rapist]) and the government defendant."  Id. at *4.

Johnson differs from the situation before me in that the plaintiffs here knew at the time of

the sexual abuse that Boyles was a government employee.  Thus, they immediately had a duty to

inquire into the possible role of State Defendants.

For the reasons stated when considering the § 1983 claim, I also conclude that equitable

tolling and equitable estoppel based on any cover-up do not apply.  I note that OTCA claims are

not tolled for minority.  Although this seems harsh, the state legislature reached this balance

when it partially waived sovereign immunity to allow claims against the State at all.

I conclude that the OTCA claims accrued when the sexual abuse occurred because at that

time plaintiffs knew, or reasonably should have known, facts which would make a reasonable

person aware of a substantial possibility that harm, causation, and tortious conduct existed.  In

particular, plaintiffs knew facts at the time of the abuse requiring them to inquire into the role of

State Defendants.  I will consider equitable estoppel based on Boyles' threats.

III.    <u>Application of the Statutes of Limitations</u>

Boyles was put on administrative leave on November 6, 2002.  In April 2003, he returned from leave but was assigned a job involving no contact with youth.  Boyles was arrested on February 15, 2004, fired from OYA on March 16, 2004, and convicted on July 22, 2005.

A.    <u>J.D.</u>

J.D. was born on June 6, 1983 and turned 18 on June 6, 2001.  Boyles was his PPO from May 21, 1996 to December 8, 1997.  Boyles sexually abused J.D. starting at the age of 14 and continuing until after he turned 18.  J.D. realized that Boyles' conduct was wrong by the time J.D. reached 17 and a half.  J.D. filed his complaint on April 6, 2004.

The first time J.D. reported the abuse to anyone was when two state police officers came to interview him in November 2002.  J.D. had not told anybody about the abuse before because he was embarrassed and afraid that Boyles would come after him.  J.D. believed Boyles knew a lot of people in the law enforcement field and had power.  When J.D. was 18 and living at Boyles' house, Boyles asked him to do acts which J.D. did not want to do.  They argued and Boyles told J.D. that he would get him thrown in jail if he did not comply with Boyles' request.  When J.D. refused, Boyles took J.D.'s meth pipe to his probation officer and reported that J.D. was using methamphetamine, which was true at the time.  J.D. served nine months in jail for the violation.  At other times, Boyles would confirm that J.D. was not telling his mother about the sexual contact.  Boyles told J.D. that nobody would believe him if he reported the abuse because he was a criminal and drug addict, as opposed to Boyles who held "a high state job."  J.D. Decl. at 42.  Boyles also told J.D. a story a couple of times that a staff member who was sexually abusing a boy he supervised "blew the kid's head off with a shotgun" when the boy was about to

come forward.  Id. at 43.  J.D. knew that he would be in danger because he knew that Boyles owned shotguns and handguns.

For the § 1983 claims, J.D.'s claims accrued while he was a minor and were tolled until he turned 19 on June 6, 2002.  The two year limitations period, however, did not run until June 6, 2003.  Boyles threatened J.D. with jail and with "blowing his head off."  A jury could find that J.D.'s fear of filing was reasonable, particularly after Boyles had him jailed for a violation of which the new probation officer was unaware until called by Boyles.  J.D. filed his complaint two months after Boyles was arrested and before Boyles was convicted.  J.D.'s filing on April 6, 2004 could be found to be within a reasonable time after Boyles lost his power to hurt J.D. through the judicial system.  Thus, a factual issue exists on whether equitable estoppel should apply, preventing summary dismissal of the § 1983 claims for statute of limitations reasons.

J.D.'s OTCA claims accrued approximately by the time he turned 18 on June 6, 2001 (the record does not have a better date for the last act of abuse), with the limitations period running by June 6, 2003.  For the same reasons, a factual issue exists on the application of equitable estoppel, preventing dismissal of the OTCA claims.

B.    M.D.

M.D. was born on February 22, 1984 and turned 18 on February 22, 2002.  Boyles was his PPO from June 16, 1999 to December 5, 2001.  Boyles sexually abused M.D. on three occasions between June 16, 1999 and November 20, 2001.  M.D. knew that Boyles' acts were illegal.  M.D. saw Boyles at the Multnomah County jail on February 2005.  M.D. filed his complaint on November 14, 2005.

M.D. was concerned that if he did not let Boyles abuse him, Boyles would take action against him.  Boyles told M.D. that he should not tell anyone about the abuse because Boyles

could make M.D.'s life easy or hard and would put him in custody if he reported the abuse. M.D. knew that Boyles had the power to send him to MacLaren or to impose other sanctions. M.D. did not report the abuse until he saw Boyles in jail and then told his mother. M.D. then believed that Boyles could no longer harm him.

For the § 1983 claims, M.D.'s claims accrued while he was a minor and were tolled until he turned 19 on February 22, 2003. The two year limitations period, however, did not run until November 20, 2003. Boyles threatened M.D. with being sent to MacLaren, which is sufficient for a jury to conclude that M.D. reasonably waited before filing suit. M.D. filed on November 14, 2005, less than four months after Boyles was convicted. A jury could conclude that it was reasonable for M.D. to wait this long because M.D. could reasonably believe that an acquittal would allow Boyles to retaliate against him. A factual issue exists on whether equitable estoppel should apply, preventing summary dismissal of the § 1983 claims for statute of limitations reasons.

M.D.'s OTCA claims accrued at the latest on November 20, 2001, with the two year limitations period running on November 20, 2003. There also is a factual issue on the application of equitable estoppel, preventing dismissal of the OTCA claims.

C.    Jeremy Duncan

Jeremy Duncan was born on February 22, 1986 and turned 18 on February 22, 2004. Boyles was his PPO from July 20, 2001 to November 5, 2002. Boyles sexually abused Duncan multiple times while he was Duncan's PPO. Duncan knew that the abuse was wrong. He filed his complaint on October 12, 2005.

After each assault, Boyles would tell Duncan that he could not report the assaults to anyone because nobody would believe him. Boyles told Duncan that if he reported the abuse to

anybody, Boyles would send Duncan back to jail or to prison at MacLaren for many years of confinement. Boyles said that he would falsely but successfully accuse Duncan of violating his parole. Duncan believed that Boyles had the power to carry out the threats. Duncan first reported the abuse on July 28, 2004 when he was interviewed by Detective Sudaisar. Duncan remained in fear, even after Boyles was arrested, because he thought Boyles could be acquitted and then take revenge. Duncan's fear did not abate until he learned of Boyles' conviction.

For the § 1983 claims, Duncan's claims accrued while he was a minor and were tolled until he turned 19 on February 22, 2005. As with the others, Boyles threatened Duncan with MacLaren if he reported the abuse and Duncan believed the threat. A jury could conclude that Duncan's forbearance was reasonable and that his October 12, 2005 filing was within a reasonable time from when Boyles was no longer a threat. Thus, a factual issue exists on whether equitable estoppel should apply, preventing summary dismissal of the § 1983 claims for statute of limitations reasons.

Duncan's OTCA claims accrued at the latest by November 5, 2002, with the two year limitations period running on November 5, 2004. A factual issue exists on the application of equitable estoppel, preventing dismissal of the OTCA claims.

D.    Munoz Estate

Munoz was born on July 9, 1983 and turned 18 on July 9, 2001. Boyles was his PPO during several periods totaling over four years between September 19, 1996 and November 5, 2002. Munoz died on January 28, 2005 by committing suicide in his cell at Oregon State Penitentiary. The Munoz estate filed a complaint on November 14, 2005. His estate alleges that Boyles sexually abused Munoz while he was a minor. Before his death, Munoz testified about the alleged sexual abuse at the grand jury on three occasions. Munoz was interviewed by

Detective Sudaisar on several occasions in 2004.  The transcripts of the interviews contain

nothing about any threats made by Boyles.  The transcript does contain a written statement

Munoz gave Detective Sudaisar on March 29, 2004 which states that Boyles would tell him that

he wanted Munoz to have nice things and stay out of trouble but Munoz believed:  "really they

were just telling me to either give in an[d] let them take advantage of me and keep those nice

things, or if I didn't I was going to back to MacLaren, Hillcrest, whatever."  Olson Decl. Ex. N at

17.

The Munoz estate seeks to amend its admission that a letter written to his former attorney

is hearsay.  An admission may be withdrawn if:  "(1) presentation of the merits of the action must

be subserved, and (2) the party who obtained the admission must not be prejudiced by the

withdrawal."  Sonoda v. Cabrera, 255 F.3d 1035, 1039 (9th Cir. 2001).  The party who obtained

the admission has the burden of proving prejudice, which must be more than having to prove the

fact.  The prejudice must "relate to the difficulty a party may face in proving its case, for example

by the unavailability of key witnesses in light of the delay."  Id.  State Defendants have not

proffered evidence of this type of prejudice.  Moreover, the Munoz Estate claims obviously must

be proven through means other than Munoz's testimony at trial.  I will allow withdrawal of the

admission but will separately address whether the letter is hearsay or an adoptive admission, as

claimed by the Munoz Estate.

The letter is dated August 24, 2004 and discusses how Boyles provided marijuana and

alcohol to Munoz and eventually initiated sexual contact with the boy.  The letter states that

Boyles told Munoz that he really cared for him and not to let anybody know about their secret or

he would go back to MacLaren.  Munoz never reported the abuse until he was contacted by

Detective Sudaisar and learned that Boyles had been incarcerated.  Munoz said that he kept quiet

until then because he was scared, ashamed, and did not know anybody that he trusted to help him. The letter closes by saying that he is giving this statement to his attorney Amy and that he already told the grand jury everything in it.

Munoz's claims accrued while he was a minor and were tolled until he turned 19 on July 9, 2002. Munoz's OTCA claims, accrued at the latest by July 9, 2001, with the limitations period running on July 9, 2003. The complaint was filed on November 14, 2005. His complaint is not timely unless equitable estoppel applies. Munoz's grand jury testimony is not part of this record. His August 24, 2004 letter is not authenticated. The letter was filed by State Defendants attached to a declaration stating that it was produced by counsel for the Munoz estate. This is inadequate authentication. The estate did not file the letter or attempt to authenticate it.

Because it appears that a factual issue would exist about equitable estoppel, I will allow the Munoz estate time to file a copy of the letter with appropriate authentication, such as a declaration from the attorney who received the letter from Munoz. I will then consider whether the letter falls within an exception to the hearsay rule, possibly as a residual exception under Federal Rule of Evidence 807 for a statement having equivalent circumstantial guarantees of trustworthiness. Alternatively, the estate can file a transcript of Munoz's grand jury testimony under seal. The estate should file the supplemental evidence, along with any argument concerning its admissibility only, by March 23, 2007. State Defendants may respond on the admissibility issue by March 30, 2007.

    E.    M.A.

I first note that the Second Amended Complaint, filed on January 10, 2007, is the operative complaint to determine what claims M.A. alleges. An amended complaint completely supersedes the original complaint. F.D.I.C. v. Jackson, 133 F.3d 694, 702 (9th Cir. 1998). The

filing date of the original Complaint, November 14, 2005, is important for relation back of the

claims in the Second Amended Complaint to November 14, 2005 under Federal Rule of Civil

Procedure 15(c).  F.D.I.C., 133 F.3d at 702.

M.A. was born on August 3, 1983, and turned 18 on August 3, 2001.  Boyles was his

PPO from November 15, 1996 to October 27, 1997.  Boyles groped M.A. once, a few weeks

before he sodomized M.A. one time in June or July 1999.  M.A. knew that Boyles' acts were

illegal.  M.A. told no one about the sexual abuse until after Munoz died.  M.A. filed his

complaint on November 14, 2005.

M.A. was concerned that Boyles would not be convicted when the newspaper reported

that the charges relating to Munoz were dismissed after Munoz died in January 2005.  M.A.

contacted a former lawyer shortly thereafter to find out who to talk to about Boyles' abuse of

him.  That was the first time he told anybody about the abuse.  M.A. was eventually put in

contact with Detective Sudaisar of the Oregon State Police and talked to him on May 13, 2005

about Boyles' sexual abuse.  M.A. never told anybody before then because he did not want

people to think that he was gay and he did not know what Boyles could do to him with his power

and authority.  M.A. was concerned that Boyles would trump up charges and get him thrown in

jail.  J.D. told M.A. that Boyles could throw him in jail if Boyles got mad.  In this evidentiary

record, Boyles never directly threatened M.A. with jail.

For the § 1983 claims, M.A.'s claims accrued while he was a minor and were tolled until

he turned 19 on August 3, 2002.  Although the record does not contain evidence that Boyles

made a direct threat to M.A., J.D. warned M.A. about the possibility and J.D. had been jailed by

Boyles for refusing to comply with sexual activity.  This evidence goes beyond the natural fear of

retribution based on Boyles' status as a PPO.  It is a threat of harm relayed by a third party who

had suffered the same fate.  A jury could decide that Boyles' threats to J.D. reasonably prevented M.A. from filing his complaint and that the November 14, 2005 filing was reasonable.  Thus, a factual issue exists on whether equitable estoppel should apply, preventing summary dismissal of the § 1983 claims for statute of limitations reasons.

M.A.'s OTCA claims accrued at the latest in July 1999, with the two year limitations period running in July 2001.  There also is a factual issue on the application of equitable estoppel, preventing dismissal of the OTCA claims.

## CONCLUSION

Plaintiffs' Motion to Supplement Record (#178) is granted.  Estate of Munoz's Motion to Amend Plaintiff's Responses to OYA's Second Request for Admissions (#175) is granted.  State Defendants' Motions for Summary Judgment (J.D – #83), (M.D. – #88), (M.A. – #93), and (Jeremy Duncan – #98) are denied.  State Defendants' Motion for Summary Judgment (Munoz Estate – #103) is deferred as explained above.

IT IS SO ORDERED.

Dated this ____14th_____ day of March, 2007.


                                    ___/s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge